GAUDIN, Judge.
Calamia Construction Company, Inc. bid on a sand-hauling job believing the contract called for payment for each truck load delivered to the job site. The other party to the contract, however, tendered payment only after measuring the sand in place and after the sand had settled.
Calamia sued and won in the 24th Judicial District Court. As there is a reasonable basis in the record for the trial judge’s findings, we affirm the award of $13,839.00 plus interest and costs to Calamia.
Named defendants were Louisiana & Arkansas Railway Company, the Parish of Jefferson and the State of Louisiana, through the Department of Transportation. Cast in judgment for the award to Calamia was the railroad company. Other segments of the district court decree (1) allowed L & A on its cross claim to recover $13,839.00 from the Parish of Jefferson and (2) permitted the Parish on its cross claim to recover the same amount from the State of Louisiana. In essence, the judgment was in favor of Calamia and against the Department of Transportation.
Appeals were taken by the railroad company, the Parish and the Department of Transportation, each arguing primarily that the contract clearly and unambiguously stated that Calamia was to be paid for in-place fill. In-place measurement is approximately half as much as truck bed measurement.
Calamia was the low bidder on a portion of the New Orleans Demonstration Project, which endeavor was funded by the Federal Highway Administration through the State of Louisiana and which was administered locally by the planning department of Jefferson Parish. The project provided, among other things, for the removal of railroad tracks and crossings on Airline Highway in Kenner, Louisiana. Calamia was to deliver sand fill.
At the conclusion of the job, Jefferson Parish’s on-site inspector measured 2,518 yards of in-place fill and Calamia was paid $13,219.50, $5.25 per cubic yard, roughly half of what Calamia felt was due.
Calamia was one of three companies bidding for the sand-hauling job. A.K. Gillis and Son bid $8.50 a cubic yard for in-place fill while Kent’s Emergency Railroad Ser *1364 vices bid $15.90 a cubic yard for in-place fill. George M. Curtis, the railroad company’s chief engineer, recommended that Gil-lis’ bid be accepted. Mr. Curtis testified that Calamia’s “low bid was wrong ... and would get us into something like this ...” Calamia’s bid, nonetheless, was accepted.
Carl J. Calamia, owner of Calamia Construction Company, testified that before he submitted the bid in question he called Mr. Curtis and inquired about possible errors. Earlier, two other bids by Calamia had been rejected. Regarding the third bid, Mr. Calamia said, Mr. Curtis told him to “... go on and bid it truck measure and we’d straighten it out on the job.”
Mr. Calamia also said that Mr. Curtis’ assistant, identified as Mr. Waguespack, told him not to dump any sand at the job site “... unless there was a representative from the railroad to sign each and every one of those tickets if I wanted to get paid for it. And at times they were out there waiting ... my trucks were waiting a hour, hour and a half, for a representative to get out there to release my sand trucks, and I have all signed tickets for that.”
The signed tickets were necessary, Mr. Calamia said, so that he would be paid for each truck load in accord with his agreement with Mr. Curtis.
After the delivery job was completed and Calamia partially paid, a meeting took place. In attendance were Mr. Calamia, Mr. Curtis and others. As a result of this meeting, Mr. Curtis sent the following letter to Hugh N. Ford, the director of Jefferson Parish’s planning department:
“As you are aware, we have had some disagreement with Mr. C.J. Calamia as to the amount of money we owe his firm for work they performed for us as a part of the above referenced project.
“Our agreement with this firm, dated September 19, 1984 specified embankment to be paid for as cubic yards “in place”, the required finished dimensions and the compaction. Our cross-sections reveal a total of 2518 C.Y. in place.
“Mr. Calamia contends he bid the job at $5.25/CY on a truck-bed measurement and his truck tickets to prove he placed 5112 C.Y. on the job based at truck-bed measure. Our inspections and possibly the State’s, can verify these figures.
“We received three competitive bids for this work, all of which were submitted to the State, who then approved the awarding of this contract to Mr. Ca-lamia. An examination of the other two bids reveals bid prices for the dirt “in place” to be $8.50 and $15.90 per cubic yard. My estimate attached to Exhibit “B” of the agreement dated 8/12/83 was for $8.25 per cubic yard.
“I feel Mr. Calamia is the victim of a misinterpretation of the bid document and should not be penalized for his low bid.
“Will you please allow payment to Ca-lamia of the following:
Item — Grading for Warren
#5-C Street Rounaround St-2028C.Y. @ $5.25 = $10,647
Item — Grading for rehabilita-
# 5-D tion of N.O.T. Tk
# 1-9-3084 C.Y. @ $5.25 = 16,191
Total 5112 C.Y. $26,838”
The foregoing letter is dated June 28, 1985. On August 19,1985, Mr. Curtis sent this letter to Mr. Ford:
“Attached hereto is our request for a Change Order to agreement dated August 12, 1983 for the above referenced project.
“Our work is virtually finished, with only the take-up from Alliance Street to Kenner Avenue and the up-grading of the Shrewsbury Road crossing left. Since most of the charges have been accumulated, we wish to make this request for a final change order to cover over-expenditures in addition to change orders to:
“1. Include cost of required insurance by C.J. Calamia.
“2. Change method of payment to Ca-lamia for Embankment from “in-place” to “track-bed” measurement at $5.25 per cubic yard.
*1365 “3. Include cost of Shrewsbury Road Xing improvements.”
Mr. Curtis testified that he was at the meeting with Mr. Calamia and others. Mr. Curtis testified:
“Well, that letter was written as an outcome of that meeting. We were all in agreement that — I think we were all in agreement — at least I thought that Mr. Calamia had misinterpreted our bid, and that I didn’t think — if that was the case, I didn’t think he certainly should be hurt financially especially and especially by us who were middlemen and the consensus was that if we were all in agreement, we could start procedure for a change order and the State told us this would have to before anything could be started, and this letter, then, was my attempt to get a change order started.”
The requested change order, however, was not forthcoming and Calamia was forced to litigate his claim.
Although the solicitation (for bids) letter and the contract appear clear that payment for sand fill would be by cubic yards of in-place, compacted material, Mr. Calamia testified, at length, as to how the wording, particularly the phrase “embankment in place,” confused him and why he thought his bid was for loads of sand measured in the trucks.
Because of this uncertainty, he telephoned Mr. Curtis and received, Mr. Cala-mia contends, an authorization to submit a bid based on truck load measurement. Mr. Calamia said that “they were in a hurry to get these bids .. ” and get the construction project under way.
In ruling in favor of Calamia, the trial judge no doubt accepted as factual Mr. Calamia’s testimony about his conversation with Mr. Curtis. While Mr. Curtis recalled speaking with Mr. Calamia, he (Curtis) denied ever saying that Calamia should bid on a truck measure basis.
Findings of fact of a trial judge are not to be overturned on appeal unless clearly wrong and not supported by the evidence. See Perniciaro v. Brinch, 384 So.2d 392 (La.1980), one of the many decisions citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
If the trial judge believed Mr. Calamia, and the record is generally (if not completely) supportive of this finding, the district court judgment should stand. There was a defect in Mr. Calamia’s consent to the contract and the trial court correctly awarded petitioner the sum rightly due.
The district judgment awarding $13,-839.00 plus interest and costs to Calamia is affirmed with appellees to share equally the costs of this appeal.
AFFIRMED.